CHRISTINA BOWER, etc., Respondent, v. THEODORE L. BOWER, Appellant.

St. Louis Court of Appeals, January 20, 1903.

1. **Conversion: EVIDENCE: INSTRUCTION: ERROR: PRACTICE: TRIAL.** Where, in an action for conversion, it appeared that defendant purchased and paid for a stock of goods for his son (plaintiff's intestate) under the agreement that his son should pay him by a certain date, and if the son failed to do so, the agreement should be void, and the goods be turned over to defendant as his property, and there was evidence that the son paid nothing, and turned the goods over to defendant, an instruction that, though the defendant furnished the money, yet this gave him no right to the property as to take possession thereof, was error.

2. ———: ———: ———: ———: ———. In the case at bar, there being evidence that the son turned the goods in question over to defendant, and that he was in possession for several months before the son's death, an instruction which assumed as a fact that defendant took possession of the goods after his son's death, was error.

Bower v. Bower.

3. **Action: CONVERSION: PRACTICE, TRIAL: ANSWER: PLEAD-ING AND PROCEDURE.** Where, in an action for conversion of a stock of goods which defendants purchased and delivered to plaintiff's intestate under a conditional bill of sale, defendant in his answer construed such instrument as a chattel mortgage, he could not, without amending his pleading, take a different position on the trial.

Appeal from Shelby Circuit Court.—*Hon. N. M. Shelton*, Judge.

REVERSED.

*V. L. Drain* and *N. E. Williams* for appellant.

(1) It has long ago been settled in this State that after condition ·broken the mortgagee is the absolute owner of the property and can maintain trover therefor even though in the actual possession of the mortgagor. The earlier cases on this question have recently been cited with approval by both the appellate courts in the cases of Burge v. Hunter (K. C.), and Edmonston v. Jones (St. L.) cited below. Upon any theory these instructions for plaintiff are erroneous and prejudicial to the rights of appellant. Cooley on Torts, pp. 512-520; Boone on Mortgages, secs. 258, 296; Cobbey on Chat. Mort., sec. 508; Myers v. Hale, 17 Mo. App. 204; Robinson v. Campbell, 8 Mo. 365; Bowen v. Benson, 57 Mo. 26. (2) The article of agreement shows upon its face that it was prepared by parties unaccustomed to legal forms. This, however, does not vitiate it. If it does not contain sufficient evidence upon its face of the intention of the parties, parol evidence is admissible to prove whether it was intended as a conditional sale or as a mortgage. For this reason the evidence of Carl Bower should have been admitted. 6 Am. and Eng. Enc. of Law (2 Ed.) 443. (3) It may be contended by respondent that the declarations of the court were given upon the theory that the instrument of writing constituted a pledge of the merchandise from Wm. H. Bower to appellant. But the modern decisions are fatal to such a contention. If it be granted that such was the

nature of the transaction, it resolves itself in its last analysis to a mortgage with slight variations in the rights of each party after the conceded failure of the son to pay the purchase price. In other words, if a pledge, the appellant was entitled to keep them or to sell at his option, and the rights of the pledgor were qualified and restricted to the excess if any remaining after appellant was reimbursed. And the death of Wm. H. Bower could not alter the rights of the parties in the slightest degree. The property was still subject to the lien of appellant. He was vested with the right of possession and all incidents thereto until the price was paid, and there being no tender of the amount due this action could not be maintained. And upon the abandonment by the pledgor in his lifetime the property became appellant's unconditionally. 22 Am. and Eng. Ency. of Law (2 Ed.), pars. 8, 9, 10, pp. 864, 865, 866, 867.

*J. D. Dale* and *W. O. L. Jewett & Son* for respondent.

(1) In answer to appellant's attacks on the petition respondent deems it sufficient to quote from the petition: "About the 18th day of September, 1897, said Wm. H. Bower departed this life intestate and at the time of his death he was the owner and in possession of a stock of merchandise," etc. When it is alleged that plaintiff is the "owner and in possession," it would be absurd to state that he is entitled to possession. (2) Bank v. Tiger Tail M. & L. Co., 152 Mo. 145, quoted by appellant, simply decides that in trover one must state that plaintiff is either in possession or had the right to possession. This petition states the stronger alternative. (3) Bank v. Fisher, 55 Mo. 51, quoted by appellant, simply decides that a mortgagee can not maintain trover. To same effect are the other authorities quoted by appellant. Respondent admits that if the plaintiff had neither actual possession nor the right he could not maintain trover. (4) On page 746, vol.

26, Am. and Eng. Ency. of Law, quoted by appellant, this language is used: "Where plaintiff in an action of trover is out of possession, the invariable legal requirement is that in connection with a property absolute or special in the chattels in controversy, he must have had at the time of conversion a right to the immediate possession."

BLAND, P. J.—Plaintiff, as administratrix of the estate of William H. Bower, deceased, brought suit against the defendant, alleging in her petition that her intestate was in the possession of a stock of furniture and undertaker's goods situated in a storehouse in the town of Bethel, Shelby county, Missouri; that after the death of William H. Bower, defendant took possession of said goods and converted them to his own use; that the value of the goods was $3,500.

The answer, omitting caption, is as follows:

"Defendant answering plaintiff's petition herein denies each and every allegation therein contained.

"For another and further answer and defense defendant says that on the sixth day of May, 1895, he loaned William H. Bower, since deceased, the sum of two thousand forty-one dollars and sixty-one cents; that same was invested in the purchase of a stock of furniture and undertaker's goods, the same being the stock of merchandise in controversy, except the jewelry, which was not a part of said stock and was never at any time owned by the deceased or any of the parties to this suit and to which none of said parties ever at any time had any interest or control over. That subsequently, on the seventh day of May, 1895, defendant and said William H. Bower entered into a contract in writing whereby it was agreed that if the note given by said William H. Bower for the purchase price aforesaid, to-wit, the sum above was not paid by the seventh day of May, 1897, that the said stock of goods should be turned over to and become the property of this defendant.

"That said purchase price was not paid defendant nor any part thereof, and that in accordance with said agreement said stock of goods was turned over to defendant and became his property, unconditionally, and said note was cancelled and is now tendered plaintiff in this answer. Defendant says that at the death of said William H. Bower said stock of goods was the property of defendant and that said William H. Bower had no interest whatever therein. And having fully answered defendant prays to be discharged with his costs."

The reply was a general denial of the new matter in the answer.

The evidence is that defendant purchased the goods in 1896, from his brother, and paid him for them and put William Bower, who was his son, in possession and control of the goods, under a written contract to be hereafter noticed.

For plaintiff the evidence is that William Bower took charge of the store and goods and dealt with them as his own and tends to show that he continued in charge of them until his death in September, 1901; that after his death defendant took charge of the store and goods and converted the goods to his own use.

Defendant paid $2,041.60 for the goods when he made the purchase, and the evidence is that there was about the same amount of goods on hand when William Bower died as when he first took charge of them.

For the defendant the evidence is that when he made the purchase of the goods the following contract was entered into between him and William Bower:

"Bethel, Missouri, Shelby county, May 7, 1895.

"Between T. L. Bower, party of the first part, and W. H. Bower, party of the second part. T. L. Bower, party of the first part, agrees to furnish the money to buy stock of furniture and undertaker's goods of W. C. Bower, and W. H. Bower, party of the second part, agrees to run and sell the furniture and undertaking for party of the first part and further agrees to pay all running expenses and rent, and pay six per cent inter-

est on purchase money, and party of the second part to receive all profits after paying expenses; and it is further agreed that if the purchase money and interest not being paid by party of the second part by May 7, 1897, then the above agreement shall be null and void and shall then be turned over to party of the first part as his property.

(Signed) "T. L. BOWER, party of the first part.
(Signed) "W. H. BOWER, party of the second part."

The evidence further shows that William Bower was the son of defendant and was a man of dissolute habits; that plaintiff had been divorced from William Bower and had in her divorce suit obtained a judgment of alimony against him which had not been paid; that in May, 1897, William Bower had paid nothing on the goods to his father and early in that month he surrendered them to his father for the reason that he was unable to pay for them and that he intended to go West to better his condition; that after the surrender of the goods to his father he continued to live with him and stayed about the store part of the time and aided in selling goods but that the business was mostly conducted by the defendant's daughter and other members of his family in the name of and for the defendant.

For the defendant the court gave correct instructions to the effect that if defendant took possession of the goods under the written contract between himself and son before the death of the son, plaintiff could not recover.

For the plaintiff the court gave the following erroneous instructions:

"2. Though the jury may find that the defendant furnished the money to pay for the property in controversy, yet this gave him no right to the property, or to take possession thereof."

"4. Though the jury may believe that defendant had a written contract with his son, William H. Bower, by which it was agreed that in case said son did not pay for the property by a certain date the property was to become defendant's, still this gave defendant no legal

right to take possession thereof after the death of William H. Bower.''

Number 2 ignores the existence of the written contract between defendant and William Bower, and No. 4 assumes as a fact that defendant took possession of the goods after the death of William Bower, the vital question in issue.·

Defendant asked the following instruction, which was refused:

''If you find from the evidence that Theodore L. Bower furnished the money for the purchase of the goods in controversy, and that William H. Bower signed the contract read in evidence, then your verdict must be for the defendant, unless you further find that William H. Bower repaid the purchase price thereof to his father.''

The uncontradicted evidence is that the owner refused to sell the goods to William Bower and that he did sell them to defendant and defendant paid him for them.    If we should construe the contract between William Bower and defendant in the light of this evidence, we would hold the writing to be a conditional bill of sale and that the goods were the absolute property of the defendant, if they were not paid for as agreed in the written contract.    But the defendant by his answer has construed the writing to be in the nature of a chattel mortgage and he could not, without amending his pleadings, take a different position on the trial.

For error in giving instructions Nos. 2 and 4 for plaintiff, the judgment is reversed and the cause remanded.    *Reyburn* and *Goode, JJ.,* concur.